UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SANDRA MILLER,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security

Defendant.

NO. CV-11-225-RHW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff's Motion for Summary Judgment, ECF No. 14.The motion was heard without oral argument. Plaintiff is represented by Maureen Rosette. Defendant[1] is represented by Assistant United States Attorney Pamela De Rusha and Special Assistant United States Attorney Debra Meachum.

**I. Jurisdiction**

On December 19, 2008, Plaintiff protectively filed a Title II application for disability insurance benefits (DIB). Plaintiff alleges she has been disabled beginning April 20, 1999.

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

Her application was denied initially and again denied on reconsideration. A timely request for a hearing was made. On May 5, 2010, Plaintiff appeared at a hearing in Spokane, Washington before Administrative Law Judge (ALJ) Marie Palachuk. Plaintiff appeared *pro se*. Dr. Reuben Beezy, M.D., a medical expert, and Deborah Lapoint, a vocational expert, also participated.

The ALJ issued a decision on May 10, 2010, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which was denied April 28, 2011. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h). Plaintiff filed a timely appeal with the U.S. District Court for the Eastern District of Washington on June 9, 2011. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**II. Sequential Evaluation Process**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 404.1574; *Keyes v.*

*Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1571. If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520©. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1508-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. § 404.1520(e). If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, proceed to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education, and work experience? 20 C.F.R. § 404.1520(f).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can

perform other substantial gainful activity. *Id.*

**III. Standard of Review**

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 .S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**IV. Statement of Facts**

The facts have been presented in the administrative transcript and the ALJ's decision and will only be summarized here.

At the time of the hearing, Plaintiff was 58 years old. Plaintiff completed the 11th grade, but then went to Seattle Community College and obtained a secretarial certificate. She has previously worked as a waitress, cashier, administrative clerk, secretary, farm worker feeding livestock, and restaurant manager.

Plaintiff lived alone. She testified she could not work because of her fibromyalgia. She described it as hurting all over.

**V. The ALJ's findings**

The ALJ noted that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2003. (Tr. 27.) Consequently, Plaintiff must establish disability on or before June 30, 2003, in order to be entitled to disability insurance benefits.[2]

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of April 20, 1999 through June 30, 2003.[3] (Tr. 27.)

At step two, the ALJ found through June 30, 2003, the date last insured, Plaintiff has the following severe impairments: fibromyalgia, positive Epstein-Barr virus, bilateral carpal tunnel syndrome, status post hysterectomy in 1989, and status post jaw surgery in 1974. (Tr. 27.)

At step three, the ALJ found through June 30, 2003, the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. She considered impairments listed under section 1.00 (Musculoskeletal System), section 11.00 (Neurological), and 14.00 (Immune System Disorders). She concluded there were not the requisite findings on examination required for disability to be predicated on the Listings. (Tr. 31.)

The ALJ determined that through June 30, 2003, Plaintiff had the residual

---

[2]Plaintiff was allowed benefits under Title XVI, beginning December 19, 2008.

[3]The ALJ noted that Plaintiff worked after the alleged disability onset date and earned $1,425.50 in 2000 and $2,465.00 in 2004, but found this work activity did not rise to the level of substantial gainful activity. (Tr. 27.)

functional capacity to perform light work,[4] as defined in 20 C.F.R. § 404.1567(b), except she was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and frequent handling and fingering. (Tr. 31.)

At step four, the ALJ concluded Plaintiff was able to perform past relevant work as a waitress, cashier 2, administrative clerk, secretary, bartender, and restaurant manager. (Tr. 33.)

## VI. Issues for Review

Plaintiff presents the following issues for review:

1. Whether substantial evidence supports the ALJ's conclusions;
2. Whether the ALJ properly considered the opinion of the medical expert who testified at the hearing;
3. Whether the ALJ met her burden of fully and fairly developing the record; and
4. Whether the ALJ properly considered Plaintiff's treating source.

## VII. Discussion

At issue is whether the ALJ's conclusion that Plaintiff is capable of light

---

[4](b) Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

work is supported by the record.[5]

At the hearing, Dr. Beezy provided testimony as a medical expert. He had reviewed all the records, but did not treat or examine Plaintiff. (Tr. 58.) Dr. Beezy concluded Plaintiff was limited to *sedentary work* "because of the various joint involvement in the fibromyalgia, carpel tunnel syndrome, depression." (Tr. 60.) Other limitations included occasional grasping and touching and no crawling and occasional crouching. (Tr. 60.)

Plaintiff indicated an onset date of April 20, 1999. When asked why she picked that date, Plaintiff thought it was because that was when she was diagnosed with fibromyalgia. The earliest medical records were from 1998. Notably, in February, 1998, Plaintiff was seen for abdominal pain and severe back pain after lifting a horse gate. It was noted that Plaintiff had chronic fatigue syndrome with positive Epstein-Barr virus (EBV) titers. (Tr. 300.) Then, in November, 1998, Plaintiff was seen for thoracic spine pain. She was assessed with thoracic spine spasms, chronic fatigue syndrome, depression, and scoliosis. (Tr. 299.) She was given a B12 shot and restarted taking Paxil. (Tr. 299.)

She had two visits in 2000. In June, 2000, she reported Paxil was helping her depression and anxiety. She was assessed with stress incontinence, question geographic tongue (spots on her tongue), possible carpal tunnel syndrome and sleep disturbance/fatigue (Tr. 298.) In November, 2000, she was assessed with gastritis and migraine headaches, but also reported that joint pain continued to be

[5]Notably, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible. (Tr. 32.) She specifically rejected Plaintiff's claims that she had to stay in bed most of the time due to her symptoms. (Tr. 32.) Plaintiff did not challenge the ALJ's credibility determination.

a problem for her. (Tr. 295-96.)

In March, 2001, ARNP Paddy Carlson evaluated Plaintiff for DSHS benefits. (Tr. 294.) Plaintiff believed she was disabled because of her fibromyalgia. (Tr. 294.) She indicated to ARNP Carlson she was told in 1997 that she might have fibromyalgia and that she had a positive EBV titer. (Tr. 294.) She complained of muscle and joint fatigue and discomfort throughout her body. (Tr. 294.) It was noted she complained of arthralgias (joint point) on past visits. (Tr. 294.)

Over a year later, in September, 2002, ARNP Carlson again completed a physical evaluation for DSHS, and indicated that Plaintiff was limited to light work. (Tr. 234.). ARNP Carlson noted a diagnosis of fibromyalgia that caused mild impairment, with limited range of motion with the shoulders, knees, and wrists. (Tr. 233.) ARNP Carlson believed exercise and warm water swimming would restore Plaintiff's ability to perform work in a normal day to day setting. (Tr. 234.) In November, 2002, ARNP Carlson agreed to 3-6 months of public assistance benefits to get help for her hand and arm pain. ARNP Carlson also recommended retraining so Plaintiff could return to the work force. (Tr. 293.)

In December 2002, Dr. Wurst, M.D. conducted an electrodiagnostic study and concluded the findings were consistent with very mild right carpal tunnel syndrome. (Tr. 291.)

Subsequent evaluations in 2003 indicated Plaintiff would be limited to sedentary work. Notably, in February, 2003, Blaze Burnham, ARNP, completed a physical evaluation for DSHS, and identified moderate impairments caused by carpal tunnel, joint pain, fatigue, and fibromyalgia. (Tr. 227.) ARNP Burnham concluded Plaintiff would be limited to *sedentary* work, or less. (Tr. 228.) ARNP Burnham also noted Plaintiff has a decreased range of motion. (Tr. 228.)

The conflicting opinions are ARNP Carlson's conclusion that Plaintiff was capable in 2003 of performing light work, and Dr. Beezy and ARNP Burnham's

conclusion that in 2003 Plaintiff was capable of only sedentary work with occasional grasping and touching. The ALJ rejected Burnham's opinion because the exam did not present any worse symptoms than the August, 2002 exam, so there would be no reason to change the residual functional capacity. (Tr. 33.) The ALJ also discounted Dr. Beezy's testimony because he did not give a well-supported basis for his opinion, given that the medical evidence of the record indicated only mild findings on examinations, and specifically because no abnormalities of the joints was ever noted. (Tr. 33.)

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). ARNP Carlson and Burnham are considered an "other medical source." SSR 06-03p. Information from "other medical sources" may not be used to establish the existence of a medically determinable impairment, but such opinions are relevant to the issue of impairment and severity and functional limitations imposed by the impairment. § 404.1513(d). Dr. Beezy is a non-treating, non-examining physician. His opinion may serve as substantial evidence if it is consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)

Here, the ALJ did not err in giving more weight to ARNP Carlson's opinion that Plaintiff was capable of performing light work. ARNP Carlson was Plaintiff's treatment provider from 2000-2003, and was in the best position to assess her ability to work. Given that nothing had changed in Plaintiff's physical condition from 2002 to 2003, ARNP Burnham's and Dr. Beezy's opinion were not consistent with the record, and thus, it was reasonable to give less weight to their opinions. Also, ARNP Burnham did not provide any treatment; rather she completed an evaluation for DSHS.

Consequently, the ALJ's determination that Plaintiff was capable of performing light work in 2003 is supported by the record. The ALJ correctly

noted there was "simply no corroborating evidence" to support Plaintiff's disability claim. And there clearly is no support in the record that Plaintiff was disabled or even significantly impaired as of April 20, 1999, her alleged onset date. The limited treatment records do not indicate any significant findings that would have precluded Plaintiff in 2003 from performing the limited range of light work ultimately assessed by the ALJ. Notably, Plaintiff did not seek significant or ongoing treatment during the time period relevant to this case. If Plaintiff's testimony is true, that is, in 2003 she was nearly bed-ridden because of her pain, at the minimum, the records would have indicated some need for pain medication. Also, Plaintiff refused to engage in any of the suggested conservative treatment plans, including quitting smoking and exercise. Simply put, the medical records do not corroborate Plaintiff's statements regarding the intensity or disability effect of her pain during the time period in question.

The ALJ did not err in not developing the record further. A review of the transcript shows the ALJ carefully took steps to ensure that Plaintiff understood what was happening at the hearing. There was no ambiguity in the limited record from which to determine whether Plaintiff was disabled in 2003.

**VIII. Conclusion**

Plaintiff has not met her burden of showing the ALJ's decision that she was not disabled prior to June 30, 2003 was not supported by the record, nor has she shown the ALJ committed legal error.

Accordingly**, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF 14, is **DENIED**.
2. The decision of the ALJ denying benefits is affirmed.

///

///

///

///

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel, and **close the file**.

**DATED** this 22nd day of August, 2013.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

Q:\RHW\aCIVIL\2011\Miller (SS)\sj.wpd